**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Nutritech Solutions, Ltd., | ) | No. CV 06-461-PHX-MHM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Matrix Nutrition, LLC, and Mark Holt, and Kathy Holt, | ) | |
| Defendants. | ) | |

Presently pending before the Court are Plaintiff's Motion for Leave to File First Amended Complaint and First Amended Answer to Counterclaim (Doc. 24) and Defendants' Motion for Summary Judgment (Doc. 17). Both of these Motions are fully briefed. Defendants also have filed a Motion for Oral Argument (Doc. 31). The Court, having considered the papers submitted and, finding oral argument unnecessary,[1] hereby issues the following Order.

BACKGROUND

Plaintiff Nutritech, Ltd., manufactures and distributes dairy animal health and nutrition products and supplements used for the prevention and treatment of milk fever, a calcium deficiency common in dairy cows. Nutritech produced and marketed a product

---

[1] Accordingly, Defendants' Motion for Oral Argument is denied.

1    called Nutri-Chlor, an anionic dairy supplement that helps cows maintain normal blood-

2    calcium levels.  On July 3, 2001, the United States Patent and Trademark office granted

3    Plaintiff a trademark for Nutri-Chlor under Registration No. 2,465,697.

4        According to Plaintiff, on or about July 6, 2005, Nutritech entered into an Intellectual

5    Property and Technology Transfer Agreement with Novus International, Inc. ("Novus"),

6    pursuant to which Novus purchased from Nutritech all of the intellectual property,

7    technology and product registration related to Nutri-Chlor.  On or about July 12, 2005,

8    Nutritech also assigned to Novus all of Nutritech's right to sue for and collect on all claims

9    for damages by reason of past, present, or future infringement of the Nutri-Chlor trademark

10   (the "Nutritech Assignment").

11       On or about September 27, 2006, Novus assigned back to Nutritech the right to sue

12   and recover damages for any infringement, misuse, dilution or other un-permitted use of the

13   Nutri-Chlor trademark (the "Novus Assignment").  The Novus Assignment was recorded

14   with the United States Patent and Trademark Office on or about October 18, 2006.

15       In its Complaint, filed February 13, 2006, Plaintiff has asserted claims against Matrix

16   Nutrition, LLC, Mark Holt, and Kathy Holt (the "Defendants"), arising out of an alleged

17   business agreement gone awry.  Plaintiff's complaint including three counts brought under

18   the Lanham Act, 15 U.S.C. § 151 et seq., allegedly "arising out of Defendants' refusal to

19   cease and desist the unauthorized use of [Plaintiff's] registered trademarks."[2]  Compl. ¶ 1.

20   Specifically, Plaintiff's Lanham Act claims include a federal trademark infringement claim

21   (Count VIII), a false designation of origin claim (Count IX), and a federal trademark dilution

22   claim (Count X).

23

24   _____

25       [2]   Plaintiff also has asserted claims for Breach of Contract - Non-Disclosure
Agreement (Count I), Breach of Contract - Sales Agent Contract (Count II), Breach of the
26   Implied Covenant of Good Faith and Fair Dealing (Count III), Misappropriation of Trade
Secrets (Count IV), Unfair Competition (Count V), Breach of Fiduciary Duty (Count VI),
27   and  Conversion (Count VII).  These claims are not at issue in Defendants' Motion for
28   [Partial] Summary Judgment.

Plaintiff has moved for leave to file a first amended complaint and first amended answer to Defendants' counterclaims.  Plaintiff seeks to add three additional statements into the general allegations section of its Complaint.  The proposed additional language reads as follows:

> 14.    On or about July 6, 2005, Nutritech entered into an Intellectual Property and Technology Transfer Agreement with Novus International, Inc. ("Novus") pursuant to which Novus purchased from Nutritech all of the intellectual property, technology and product registrations related to Nutri-Chlor (the "IP Purchase").

> 15.    In connection with the IP Purchase, Nutritech also assigned to Novus its right to sue for and collect on all claims for damages by reason of past, present or future infringement of the Nutri-Chlor trademark.

> 16.    On or about September 27, 2006, Novus assigned back to Nutritech the right to sue and recover damages for any infringement, misuse, dilution or other un-permitted use of the Nutri-Chlor trademark by defendants herein that took place prior to July 6, 2005.

Pl.'s Mot. for Leave, Ex. 1, at 3:6-16.

Plaintiff asserts that allowing leave for such amendment is appropriate to cure a technical defect in its original Complaint.  Defendants also have responded to Plaintiff's Motion for Leave to Amend by arguing that Plaintiff's Motion should be denied because Plaintiff lacked standing at the time it filed suit and that amendment would be futile. Further, Defendants have moved for partial summary judgment arguing that Plaintiff lacks standing to bring the Lanham Act claims.  The Court first considers Plaintiff's Motion for Leave to File a First Amended Complaint and First Amended Answer to Defendants' Counterclaim.

/////
/////
/////
/////
/////

DISCUSSION

I.    PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT AND FIRST AMENDED ANSWER TO COUNTERCLAIM

A.    LEGAL STANDARD

Rule 15(a) provides that after a responsive pleading is filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."    Amendments should be allowed with "extreme liberality."    Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).    District courts have substantial discretion in determining when an amendment should be allowed.    See Plumeau v. Sch. Dist. No. 40 County of Yamhill, 130 F.3d 432, 439 (9th Cir. 1997).    Factors that guide a court's determination as to whether to grant leave to amend include the following: (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice to the opposing party, and (4) futility of amendment.    Forsyth v. Humana, Inc., 114 F.3d 1467, 1482 (9th Cir. 1997); Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).    The factor carrying the greatest weight is whether the proposed amendment will unduly prejudice the opposing party.    Eminence Capital, LLC v. Aspeon, 316 F.3d 1048, 1051 (9th Cir. 2003).

"Futility of amendment can, by itself, justify the denial of a motion for leave to amend," Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).    A proposed amendment is futile if no set of facts can be proved under the amendment that would constitute a valid claim or defense.    See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).    The party opposing the amendment bears the burden of showing why the amendment should not be granted.    See Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 666 (Fed.Cir. 1986).

B.    ANALYSIS

Plaintiff moves for leave to file a first amended complaint and first amended answer to Defendants' counterclaim.    Plaintiff seeks to add information into the general allegations section of its complaint to describe three additional events relevant to the alleged trademark

- 4 -

violation at issue.  Plaintiff does not seek to add additional claims or parties.  Plaintiff asserts that allowing it to amend its Complaint is warranted in light of the liberal standard for amending a complaint in general and the absence of prejudice to the Defendants here. Plaintiff states that it seeks leave to amend in an effort "to cure a technical defect upon which defendants would have this Court summarily dispose of its legitimate and, more importantly, meritorious Lanham Act claims."  Pl.'s Mot. for Leave to Amend, at 6:18-20.  Plaintiff further asserts that it has at all times acted in good faith and that it simply "failed to recall the prior assignment of the Lanham Act claims to Novus."  Id. at 6:24-25.  Once "reminded of [the] assignment," Plaintiff remedied "any technical impediment to its prosecuting those claims."  Id. at 6:26 & 7:1-2.  Therefore, Plaintiff contends, granting leave to amend its Complaint is warranted.

Plaintiff asserts that Arizona law, rather than the Lanham Act, applies to determine standing to sue in a chose in action suit.  Plaintiff is misguided.  The issue here is not a chose in action issue where, for example, a plaintiff has been assigned the right to sue without any previous interest in the trademark.  Here, because of Plaintiff's previous ownership of the trademark and the rights associated therewith, the Lanham Act would apply to the standing determination.  In addition to the standing requirements under Article III to the United States Constitution,[3] there is an additional standing requirement under the Lanham Act.  Section 43(a) of the Lanham Act permits "any person who believes that he or she is likely to be damaged" by the proscribed conduct to bring a civil action.  15 U.S.C. § 1125(a).  As the Ninth Circuit Court of Appeals has explained, a plaintiff only needs to demonstrate a

---

[3]  There are three elements to the "constitutional minimum of standing."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent non 'conjectural' or 'hypothetical.'"  Id. "Second there must be a causal connection between the injury and the conduct complained of-the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . . th[e] result [of] the independent action of some third party not before the court.'"  Id. "Third, it must be 'likely' as opposed to merely 'speculative' that the injury will be 'redressed by a favorable decision.'"  Id. at 561.

1    "commercial interest in the misused mark" to satisfy the liberal standing requirement of the

2    Lanham Act.  Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1109 (9th Cir. 1992); see also Jack

3    Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc., 407 F.3d 1027, 1037 (9th Cir.

4    2005) (explaining that under the "false association" prong of section 43(a) of the Lanham

5    Act, "a plaintiff need only allege commercial injury based upon the deceptive use of a

6    trademark or its equivalent to satisfy standing requirements").  Under the Lanham Act's

7    definitional section, a "registrant" includes the assigns of the registrant.  See 15 U.S.C.A. §

8    1127.

9         Plaintiff was the owner of the trademark at the time of the alleged misuse.  Thus,

10   Plaintiff clearly had a commercial interest in the misused mark.  Furthermore, Plaintiff has

11   met the minimum standard to satisfy the standing requirement by alleging commercial injury

12   based upon the deceptive use of a trademark.  Plaintiff's proposed First Amended Complaint

13   will remedy any deficiency in its original Complaint caused by the temporary loss of the right

14   to sue for past infringement.

15        Defendants contend that Plaintiff's Motion for Leave to Amend the Complaint should

16   be denied because amendment would be futile.  Defendants cite Nat'l Licensing Ass'n, LLC

17   v. Inland Joseph Fruit Co., 361 F. Supp. 2d 1244 (E.D. Wash. 2004) to argue that under the

18   Lanham Act, an assignment of the mere right to sue for alleged misuse of a registered

19   trademark, rather than assigning the entire trademark ownership, is not enough to confer

20   standing.  Defendants overlook the distinction between Inland Joseph Fruit and the instant

21   case.  In Inland Joseph Fruit, the assignment was to a third party with no alleged injury from

22   the previous infringement.  Here, the right to sue was assigned back to the entity that owned

23   the trademark at the time of the alleged injury.

24        Defendants also cite Shonac Corp. v. Amko Int'l Inc., 763 F. Supp. 918, 931 (S.D.

25   Ohio 1991).  The court in Shonac stated that the relevant test concerning standing under

26   section 43(a) is the "reasonable interest" test.  Thus, to have standing under section 43(a), a

27   plaintiff must possess "a sufficient nexus with the alleged wrongful conduct."  Id. at 929.  In

28   Shonac the district court found that the plaintiff lacked standing to sue under the Lanham Act

1    because, as a shoe importer, he had no interest in the shoes' trademarks.  Id. at 931.  In so

2    ruling, the court stated that a "plaintiff must have some discernible interest in the mark in

3    order to have a reasonable interest and therefore standing to sue under § 43(a)."  Id.

4         While making its standing determination, the Shonac court considered the Seventh

5    Circuit case of Dovenmuehle v. Gilldorn Mortgage Midwest Corp., 871 F.2d 697 (7th Cir.

6    1989).  In Dovenmuehle, the plaintiffs were members of a family challenging the use of the

7    family name as a trade-name.  However, the family company, bearing the family's name, had

8    been sold in its entirety in 1923, and subsequently sold several more times.  In 1987, the

9    owner of the company attempted to change the company name to the family name.  The

10   plaintiff-family members had no trademark interest in the family company, and were not in

11   competition with the company's business of mortgage lending.  The court concluded that the

12   plaintiffs lacked standing under § 43(a) because they did not have interest in the trade-name

13   nor were they in competition with the defendant.  Shonac 763 F. Supp. at 930-31 (discussing

14   Dovenbuehle 871 F.2d at 700-01).

15        Both Shonac and Dovenbuehle are easily distinguishable from the instant case.  As

16   with Inland Joseph Fruit discussed above, the plaintiffs in Shonac and Dovenbuehle did not

17   own the rights to the trademark at the time of the alleged violation.  In the instant case, the

18   Plaintiff did, in fact, own the trademark during the relevant time period.  Moreover, as the

19   owner of the trademark at the time of the alleged injury, Plaintiff could reasonably assert that

20   it has a sufficient nexus with the alleged wrongful conduct.  Thus, neither Shonac nor

21   Dovenbuehle are applicable here.

22        Defendants additionally cite Int'l Soc'y for Krishna Consciousness of Western

23   Pennsylvania, Inc. v. Stadium Auth. of the City of Pittsburgh, 479 F. Supp. 792 (W.D. Pa.

24   1979) ("ISKCON") as helpful in determining standing to sue under the Lanham Act.  Indeed,

25   ISKCON is instructive.  ISKCON is a trademark case that extensively references the

26   Supreme Court patent case of Crown Die & Tool Co. v. Nye Tool & Machine Works, 261

27   U.S. 24, 40, 43 S.Ct. 254, 67 L.Ed. 516 (1923), as instructive by analogy to trademark law.

28   Applying by analogy the Supreme Court's instruction regarding patent law to the Lanham Act

- 7 -

1  and trademark law, perhaps the most instructive portion of <u>Crown Die & Tool</u> to the instant

2  case is the quote from Robinson on Patents, vol. 3, § 937, which states as follows:

> With a single exception the plaintiff in an action at law must be the person or persons in whom the legal title to the patent resided *at the time of the infringement*.  An infringement is an invasion of the monopoly created by the patent, and the law which defines and authorizes this monopoly confers only upon its legal owners the right to institute proceedings for its violation. These owners are the patentee, his assignee, his grantee, or his personal representatives; and none but these are able to maintain an action for infringement in a court of law. . . .'

> The sole exception to the rule that only he who is the owner of the patent at the time of the infringement can sue for damages . . . is when such owner assigns the patent and also the claim for past infringements to the same person.  In such a case, as the title and ownership of the claims are united, it is held that the owner may sue.

12  <u>Id.</u> at 40-44, 43 S.Ct. at 258, 259, 67 L.Ed. at 521-23. (Citations omitted).  The Supreme

13  Court's instruction demonstrates that to sue for patent, and for argument's sake for a

14  trademark violation, requires either (1) ownership of the patent or trademark at the time of

15  the infringement or (2) subsequent ownership of the trademark and the assignment of claims

16  of past infringements.

17       In the instant case, Plaintiff was the owner of the trademark at the time of the alleged

18  infringement.  Though Plaintiff sold its trademark and its right to claims of past infringement

19  before it filed suit, it subsequently reacquired the right to infringement claims by Defendants

20  Mark Holt, Matrix Nutrition and/or Kathy Holt that took place from the time that Plaintiff

21  acquired the trademark up to the July 6, 2005 sale date. Therefore, Plaintiff has reunited its

22  ownership of the trademark at the time of the infringement and the right to assert

23  infringement claims during its ownership period.

24       Defendants correctly point out that standing to assert a claim is determined at the

25  commencement of litigation.  <u>Biodiversity Legal Foundation v. Badgley</u>, 309 F.3d 1166,

26  1171 (9th Cir. 2002).  However, the Court must also be cognizant of limited judicial

27  resources. Dismissing Plaintiff's Lanham Act claims at this juncture because of an already-

28

1   rectified technicality, for possible reassertion at a later date, would not be an efficient use of

2   judicial resources.

3          Defendants quote Gaia Technologies, Inc. v. Reconversion Technologies, Inc., 93

4   F.3d 774, 780 (Fed. Cir. 1996), which holds that "[a]llowing a subsequent assignment to

5   automatically cure a standing defect would unjustifiably expand the number of people who

6   are statutorily authorized to sue."  Defendants use this language to assert that granting

7   Plaintiff leave to amend in the instant case would be futile because a subsequent assignment

8   of rights, as we have here, does not confer retroactive standing to sue.  However, Defendants

9   overlook the clear distinction between Gaia Technologies and the instant case.  In this case

10  the assignment is not randomly assigned to a third party.  Rather, the assignment is back to

11  the party who was allegedly injured by Defendants' actions and who owned the right to sue

12  at the time of the alleged injury.  Thus, Gaia Technologies is inapplicable to the instant case.

13         Defendants cite Jordan v. Los Angeles, 669 F.2d 1311, 1324 (9th Cir. 1982), vacated

14  on other grounds, 459 U.S. 810 (1982) to assert that leave to amend may be denied when the

15  moving party knew or should have known the facts upon which the amendment is based

16  when it drafted the original pleading but failed to include them in the original pleading.  In

17  Jordan, the Ninth Circuit Court of Appeals found that the district court did not abuse its

18  discretion by denying a motion to amend the complaint to add new causes of action.  Id. at

19  1323.  The court's findings were based on the fact that allowing amendment in that case

20  would have prejudice the defendant by requiring additional discovery, additional expenses,

21  and further delay.  Id.  The court also found that the plaintiff had not satisfactorily

22  demonstrated the reason that amendment was necessary.  Id.  Finally the Ninth Circuit stated

23  in dicta that the district court did not abuse its discretion by disallowing leave to amend when

24  the plaintiff's attorney proffered no satisfactory reason for failing to include the proposed

25  amendments in the original complaint.  Id.

26         As noted in Jordan, the determination as to whether to grant leave to amend is within

27  the sound discretion of the trial court.  Id. at 1324.  Plaintiff here does not seek to amend to

28  add additional causes of action.  Plaintiff merely seeks to insert factual details about the

1   assignment of the Nutri-Chlor trademark into the general allegations section of the

2   Complaint.  Allowing such amendment would not prejudice the Defendants, and, indeed,

3   Defendants have not suggested that prejudice would occur.  Plaintiff contends that it acted

4   in good faith at all times and it was only through sheer inadvertence that it failed to recall the

5   prior assignment of the Lanham Act claims to Novus.[4]  Pl.'s Motion for Leave to Amend. at

6   6:23-25.  Plaintiff also argues for leave to amend in an effort to adjudicate the claims on the

7   merits rather than summarily disposing of them on a technicality.  Id. at 6:18-23.

8       The reason that Plaintiff overlooked the previous transfer of the right to sue for past

9   violations of the Nutri-Chlor trademark at the time it filed suit is unclear.  However, now that

10  Plaintiff has reacquired the right to sue for Defendants' prior alleged trademark infringement,

11  the Court finds that granting Plaintiff leave to amend its Complaint would not be futile.  Nor

12  would it significantly prejudice Defendants to allow Plaintiff to amend its Complaint to add

13  details about the assignment of the Nutri-Chlor trademark into the general allegations section

14  of the Complaint.  Therefore, in light of the liberal rule for amendment, in the absence of

15  futility, in an effort to litigate the issues on the merits, and in the interest of judicial economy,

16  the Court grants Plaintiff's Motion for Leave to File a First Amended Complaint and First

17  Amended Answer to the Counterclaim.  Consequently, the Court denies as moot Defendants'

18  Motion for Summary Judgment.

19                                    **CONCLUSION**

20      For the foregoing reasons,

21      **IT IS ORDERED** that Defendants' Motion for Oral Argument (Doc. 31) is denied.

22      **IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File First

23  Amended Complaint and First Amended Answer to Counterclaim (Doc. 24) is granted.  The

24  Clerk's Office is directed to file Plaintiff's lodged First Amended Complaint and First

25  Amended Answer to Counterclaim.

26

27       [4]  Plaintiff further details that once it was reminded of the previous assignment, it
    sought leave to amend to remedy any technical impediment to its prosecuting the Lanham
28  Act claims.  Id. at 6:25 - 7:1-2.

1    **IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment of

2  Counts VIII, IX, and X of Plaintiff's Complaint (Doc. 17) is denied as moot.

3    DATED this 3rd day of May, 2007.

4

5

6    _____

7    Mary H. Murguia
     United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28